UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MALCOM D. COBB, JR., <br><br> Plaintiff, <br><br> v. <br><br> POWELL, et al., <br><br> Defendants. | CAUSE NO. 3:20-CV-836-JD-MGG |

OPINION AND ORDER

Malcom D. Cobb, Jr., a prisoner without a lawyer, filed this action under 42 U.S.C. § 1983. Cobb was granted leave to proceed on Eighth Amendment claims against Major Powell and Lieutenant Snow for acting with deliberate indifference to his serious medical need on August 8, 2019, by dragging him into a cell during his recovery from a surgical procedure and injuring his leg. *See* ECF 6. The officers moved for summary judgment on the ground that Cobb failed to exhaust his available administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. ECF 19. Cobb has filed a response, in which he objects to the entry of summary judgment. ECF 27.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether a genuine dispute of fact exists, the court must consider the evidence in the record in the light most favorable to the non-moving party, and draw all

reasonable inferences from that evidence in favor of the non-moving party. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prison . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). The Seventh Circuit takes a "strict compliance approach" to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Id*. at 1024.

The following facts are undisputed. At all relevant times, the Miami Correctional Facility (MCF) had a grievance policy in place, which consisted of three steps: (1) a formal grievance which must be filed following an unsuccessful attempt at informal resolution; (2) a written appeal to the Warden or his designee; and (3) a written appeal to the Indiana Department of Correction Grievance Manager. ECF 22-1 at 1–2; ECF 22-2 at 3. Under that policy, inmates could grieve a variety of matters, including actions of "individual staff, contractors, or volunteers." *Id*. Before filing a formal grievance, an inmate was required to attempt to resolve it informally and to provide evidence of that

2

attempt. ECF 22-1 at 2; ECF 22-2 at 8–9. If the matter could not be resolved and the inmate still wished to file a grievance, it needed to be completed on State Form 45471 and submitted "no later than ten (10) business days from the date of the incident giving rise to the complaint[.]" ECF 22-1 at 2–3; ECF 22-2 at 9. Inmates were made aware of the grievance policy upon their arrival at MCF, and a copy was also available in the prison law library. ECF 22-1 at 1–2. Copies of the necessary forms were made available by MCF staff. *Id*. at 3.

Official grievance records reflect Cobb filed twenty-six grievances between February 2018 and December 2019, when he was incarcerated at MCF. ECF 22-3. As pertains to this case, the records show Cobb filed a grievance on August 8, 2019, alleging his personal property had been stolen. ECF 22-1 at 3; ECF 22-4 at 3. In the grievance, Cobb complained that when he returned from surgery, all of his electronics, a light, a hot pot, his glasses, and a letter from his parents had been stolen. ECF 22-4 at 3. That grievance makes no mention of the defendants or their alleged actions related to this case. *Id*. It was returned with the notation that property loss must be recovered through a tort claim. *Id*. at 1. Approximately two months later, on October 13, 2019, Cobb filed a grievance describing the incident related to this complaint. ECF 22-5 at 3–4. In it, he alleged that on August 8, 2019, Lieutenant Snow and several other correctional officers handcuffed him at the direction of Major Powell after he had returned from surgery and injured his leg, which resulted in it becoming reinfected. *Id*. With that grievance, he also included a "Request for Interview" directed to Lieutenant Snow dated August 25, 2019. *Id*. at 2. That document describes an interaction with Lieutenant

3

Snow in the "chow hall" wherein Cobb allegedly asked Lieutenant Snow about the August 8th altercation, and Lieutenant Snow just laughed at him; it did not include a response from the defendants or the facility. *Id*. The grievance was rejected by the facility as untimely, and Cobb was informed he should not write in responses to his own requests or grievances. *Id*. at 1.

As outlined above, the official grievance process at MCF consists of three steps: (1) a formal grievance; (2) an appeal to the Warden; and (3) an appeal to the grievance manager. Under the policy, an inmate must file the grievance within 10 business days of the underlying incident. Here, Cobb is complaining about an incident that occurred on August 8, 2019, and so the last possible date for filing a timely grievance was August 22, 2019. Thus, his grievance filed on October 13, 2019, was untimely.

In his response, Cobb does not dispute any of the aforementioned facts. Rather, he simply states—without elaboration—the evidence will show the correctional officers harmed him. He states that his attorney was a witness to these events, but he does not provide any sort of affidavit or testimony from her. He also states, "[a]ll my grievances was (sic) filed and I mailed copy to Attorney General office." ECF 27 at 1. To avoid summary judgment, he must provide specifics about his efforts to exhaust. *See Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). He has not sufficiently done so here.

Furthermore, Cobb has not expressly raised this argument, but given his pro se status, the court has also considered whether he could assert an argument that he was physically unable to file a grievance by the deadline. *See Lanaghan v. Koch*, 902 F.3d 683, 689 (7th Cir. 2018) (holding that a grievance process is not available "to a person

4

physically unable to pursue it"). Cobb's complaint alleges his leg was injured on the date of the incident. He indicates it later became infected,[1] but there is nothing in the record to suggest that he was unable to file a grievance between August 8, 2019, and the deadline of August 22, 2019. In fact, as the defendants point out, he was able to file a grievance about an unrelated incident on August 8, 2019, the same day he was allegedly injured. Thus, any incapacitation argument would be unavailing. *See Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011) (inmate who is incapacitated during the grievance period must file a grievance "as soon as it was reasonably possible for him to do so"). Therefore, the record shows Cobb did not exhaust his available administrative remedies before filing this suit.

For these reasons, the motion for summary judgment (ECF 19) is GRANTED. This case is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a).

SO ORDERED on August 16, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[1] In his grievance filed on October 13, 2019, he stated, "**[N]ow** I'm infected and need surgery once again and I may lose leg above knee cap because of Lt. Snow." ECF 22-5 at 3 (emphasis added). In his complaint, which was signed and dated almost a year later on September 30, 2020, he stated with regard to his damages that, "infection set in to my nub and **now** I have infection in my blood . . . ." ECF 1 at 4 (emphasis added). Clearly, even after he was allegedly infected, Cobb was able to communicate with prison officials and the court. There is nothing to suggest he was unable to do so directly following the incident before the infection plausibly had time to set in.